**SIGNED THIS: June 20, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EARL L. SMITH and VICKY L. SMITH, | ) | No. 07-82462 |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

This matter is before the Court on the Motion by the United States Trustee ("UST") to Dismiss the Chapter 7 case filed by the Debtors, Earl (EARL) and Vicky Smith (together the "DEBTORS"). The Motion seeks dismissal pursuant to Sections 707(b)(1) and (b)(2) of the Bankruptcy Code. The issue is whether a 401(k) loan is a secured debt or a "special circumstance" so as to defeat the presumption of abuse that otherwise arises.

Before filing with his wife the joint Chapter 7 petition on November 1, 2007, EARL obtained two loans from his Coulter Companies Profit Sharing and Retirement Savings Plan. On October 19, 2005, he borrowed the sum of $15,000, which he agreed to repay with interest in sixty monthly payments of $295.25. On March 28, 2006, he borrowed an

additional $15,000, which he agreed to repay with interest in sixty monthly payments of $300.57.

With each loan, he was given a Truth-in-Lending Disclosure Statement that disclosed the terms of the loan including the following: "You are giving a security interest in your vested accrued benefit under the Company Plan." Likewise, with each loan EARL signed a "Loan Application & Agreement," by which he agreed that the loan payments would be made by payroll deduction and which provided for the collateral assignment and pledge of his vested account balance not to exceed 50% of its value.

On Line 42 of their Amended Official Form 22A, the line for deducting future payments on secured claims, the DEBTORS deducted $210.40 as the 60-month average payment for 401(k) Loan #1 and $177.15 for 401(k) Loan #2. If those amounts are allowed, either as a Line 42 deduction or a "special circumstance," the DEBTORS prevail and the UST's Motion must be denied. If disallowed, their monthly disposable income would exceed the Section 707(b)(2)(A)(i) threshold, abuse would be presumed and the Motion should be granted.

As provided in Section 707(b)(2)(A)(iii), for purposes of means testing, a debtor may reduce his current monthly income by his "average monthly payments on account of secured debts" calculated in part, with reference to the "amounts scheduled as contractually due to secured creditors" in the five years after filing. 11 U.S.C. § 707(b)(2)(A)(iii)(I). Neither "secured debt" nor "secured creditor" are defined terms in the Bankruptcy Code. The term "creditor" is defined, generally, as an "entity that has a claim against the debtor." 11 U.S.C. § 101(10). The term "claim" means "right to payment" and the term "debt" means "liability on a claim." 11 U.S.C. § 101(5) and (12).

Semantics complexities aside, the real difficulty that the DEBTORS face in attempting to frame a 401(k) loan as a secured debt owed to a secured creditor, is that a 401(k) participant who borrows from his own account, is borrowing from himself. There is no separate entity to whom the debt is owed. The district court in *Eisen v. Thompson,* 370 B.R. 762 (N.D.Ohio 2007), explained it as follows:

> Retirement plan loans are qualitatively different than secured debts such as home mortgages and car loans. The retirement plan administrator does not loan the plan participant the administrator's money. It simply deducts the requested loan amount from the participant's own account, and credits the loan payments and interest back to the participant's account. If the participant defaults on the loan, the plan administrator deducts the amount owed from the vested account balance, and repays the loan with this deduction. The participant must treat this deduction as a distribution which is taxable as income to the participant in the default year. The participant may also be subject to an early withdrawal penalty. But, the plan administrator has no right to payment under the Bankruptcy Code.

370 B.R. at 768, n.10.

Granted, the loans are documented like secured transactions with a TILA Disclosure Statement and a Loan Application & Agreement that contains a collateral pledge of 50% of the value of EARL'S vested account. Yet the Agreement reflects that the loan is from EARL'S retirement plan account. The form of the documentation cannot get around the substance of the transaction, that EARL borrowed his own money.

Moreover, a retirement plan borrower has the right not to repay the loan. Nonpayment comes with liability for income taxes and penalties, but nonpayment is a valid, lawful alternative. As such, EARL'S retirement plan trustee or administrator has no claim against EARL or the bankruptcy estate.[1] Without a claim, a 401(k) plan loan is not

---

[1] The trustee or administrator "pays" the loan by performing an accounting function that simply reduces the value of the account by the unpaid balance of the loan.

3

a "debt" for bankruptcy purposes. *Eisen,* 370 B.R. at 768. With no debt, the loans are not "secured debts" and cannot be deducted under Section 707(b)(2)(A)(iii).[2]

Where a presumption of abuse arises, a debtor may rebut the presumption by demonstrating "special circumstances," such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. 11 U.S.C. § 707(b)(2)(B)(i).

As a general rule, only circumstances that are similar in nature to a "serious medical condition" or "a call or order to active duty in the Armed Forces" should be considered sufficient to rebut the presumption of abuse. *In re Hanks,* 362 B.R. 494, 501-02 (Bankr.D. Utah 2007); *In re Johns,* 342 B.R. 626, 629 (Bankr.E.D.Okla. 2006). The similarity in nature of the two examples is that they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses.

As indicated above, EARL is not obligated to repay the 401(k) loans. Certainly he desires to replenish the fund balance in his retirement account, a wise and laudable goal. But the fact that he borrowed from those retirement funds and now wishes to pay the loans back is not a life altering circumstance of the kind referenced in the statute. It is simply the consequence of a prior financial decision. Without more, the DEBTORS have failed to establish the presence of "special circumstances" sufficient to rebut the presumption of

---

[2] In addition, as noted in *Eisen,* 370 B.R. at 769-72, most pre-BAPCPA courts held that an individual debtor's retirement plan loan does not give rise to a debt or a secured or unsecured claim under the Bankruptcy Code. Presumably aware of these decisions, by not directing courts to treat 401(k) loans as secured debts for purposes of the means test, Congress chose to leave the pre-BAPCPA common law unchanged. Strong support for this position is evidenced by Section 1322(f), which provides that amounts which a Chapter 13 debtor is required to pay on retirement loans during the pendency of a plan does not constitute disposable income for purposes of Section 1325. If loans from retirement plans are properly treated as secured debts there would be no need for this provision, because disposable income is what remains after payment of those debts.

4

abuse.[3]  *See, Eisen,* 370 B.R. at 773 (repayment of loan from retirement funds not a "special circumstance").

The DEBTORS also argue that if forced into a Chapter 13 case, their retirement plan contribution and loan repayments are permitted deductions, which would result in unsecured creditors receiving only about $2,500, a 3.4% distribution under a 5-year plan. The DEBTORS characterize this distribution as not meaningful.  They rely on *In re Skvorecz,* 369 B.R. 638 (Bankr.D.Colo. 2007) for the proposition that an above-median debtor's Chapter 7 case should not be dismissed, even where the presumption of abuse arises, unless unsecured creditors would receive a meaningful distribution in Chapter 13.

The Court is not persuaded that the potential payout to unsecured creditors in Chapter 13 is an appropriate consideration.  The DEBTORS filed under Chapter 7 and the presumption of abuse has arisen under the applicable rules.  There is no indication in the statute that Congress intended a lack of a meaningful payment in Chapter 13 to be a defense to dismissal.  *See Johns,* 342 B.R. at 629 (potential payback of 0% to unsecured creditors in Chapter 13 not a "special circumstance").

The presumption of abuse arises in this case and has not been rebutted. Accordingly, the UST's Motion should be granted and the case dismissed unless the DEBTORS elect to convert to Chapter 13.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###

---

[3] The DEBTORS do not argue, for example, that they are on the verge of retirement and that repayment of the 401(k) loans is necessary to preserve a minimal post-retirement standard of living.