**SIGNED THIS: March 24, 2009**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EARL L. SMITH and VICKY L. SMITH, | ) | No. 07-82462 |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

The matter before the Court is the confirmation of the Amended Chapter 13 Plan filed by Earl L. Smith (EARL) and Vicky L. Smith (VICKY), the Debtors (together the "DEBTORS"), and the objection by Michael D. Clark, Chapter 13 Trustee (TRUSTEE).

The DEBTORS filed a petition under Chapter 7 of the Bankruptcy Code on November 1, 2007. Prior to the bankruptcy filing, EARL obtained two loans from his Coulter Companies Profit Sharing and Retirement Savings Plan. On October 19, 2005, he borrowed the sum of $15,000, which he agreed to repay with interest in 60 monthly payments of $295.25. On March 28, 2006, he borrowed an additional $15,000, which he agreed to repay with interest in 60 monthly payments of $300.57. On Form 22A, Chapter

7 Statement of Current Monthly Income and Means Test Calculation, submitted with their petition, the DEBTORS listed the remaining payments of the loans as additional expense claims on Line 56, noting that 36 payments remained on the first loan and that 42 payments remained on the second loan. As calculated by the DEBTORS, the presumption of abuse did not arise.

The United States Trustee moved to dismiss the case for abuse under Sections 707(b)(1) and (b)(2), contending that the DEBTORS' monthly disposable income was $618.55, yielding a 60-month disposable income of $37,112.88, in excess of the threshold amount of $10,950.[1] In response to the motion, the DEBTORS amended Form 22A to deduct the loan repayments as payments on secured debts. On June 20, 2008, this Court issued its Opinion and Order ruling that the 401(k) loans were not "secured debts" under Section 707(b)(2)(A)(iii) and determining that the presumption of abuse arose. The Court also held that the repayment of the loans did not establish the presence of "special circumstances" sufficient to rebut that presumption of abuse.

In lieu of dismissal, the DEBTORS moved to convert the case to Chapter 13. The DEBTORS filed Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, showing monthly disposable income on Line 58 of $293.67. On Line 59, Other Expenses, the DEBTORS listed the remaining payments on EARL'S 401(k) loans. The Amended Chapter 13 Plan proposed by the DEBTORS provides for payments of $443.26 per month for 20 months, but not

---

[1] In addition to disputing the deductions for the 401(k) loan repayments, the United States Trustee contended that the deductions claimed by the DEBTORS for vehicle ownership expense were erroneous. The DEBTORS adopted the United States Trustee's position in their Amended Form 22A.

2

commencing until April 1, 2011. It provides that the regular monthly payments on their mortgage, vehicle and motorcycle will be made directly by the DEBTORS. According to the DEBTORS' estimation, unsecured creditors will receive approximately 8%. At the confirmation hearing, the TRUSTEE objected to the Amended Plan, based on the delay in the commencement of payments. The matter was taken under advisement and briefs have been filed.

The TRUSTEE objects to the Amended Plan on three grounds. First, the TRUSTEE contends that the DEBTORS are not eligible for relief under Section 109(e) of the Bankruptcy Code, which requires that an individual have a regular income in order to qualify as a Chapter 13 debtor.[2] The Bankruptcy Code itself defines an "individual with regular income" to mean an "individual whose income is sufficiently stable and regular to enable such individual to make payments" under a Chapter 13 plan. 11 U.S.C. § 101(30). In *In re Howell*, 138 B.R. 484 (W.D.Pa. 1992), the court explained the advent of the phrase "individual with regular income," as follows:

> The purpose of a Chapter 13 plan is "to permit an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid." S.Rep. No. 95-989, 9th Cong., 2d Sess. 12 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5798. Under the original Bankruptcy Act, Chapter 13 plans were restricted to wage earners. Thus, one of the primary defects of the old law was that it did "not permit some individuals with regular income to qualify, such as

---

[2]Section 109(e) provides:
    (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650, or an individual with regular income and such individual's spouse . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 may be a debtor under chapter 13 of this title. (Footnotes omitted).

3

small business owners or social welfare recipients, because their principal incomes do not come from wages, salary, or commissions." *Id*. at 13, 1978 Code Cong. at 5799. To remedy this defect, Congress modified the Code so that "any individual with regular income" could file a voluntary petition for relief under Chapter 13. 11 U.S.C. § 109(e). This modification provides that "[e]ven individuals whose primary income is from investments, pensions, social security or welfare may use Chapter 13 if their income is sufficiently stable and regular." H.Rep.No. 95-595, 95th Cong., 1st Sess. 119, 1978 Code Cong. at 6080 . . . .

The TRUSTEE'S claim of ineligibility is based upon the DEBTORS' inability or perceived unwillingness to tender payments at the outset of the plan. What the TRUSTEE overlooks, however, are the payments being made to the DEBTORS' secured creditors directly, outside the plan. As above-median debtors, the DEBTORS have income, and a good deal of it.[3] While a debtor's income is at issue both at the outset of the case and at confirmation, for purposes of eligibility under Section 109(e), the inquiry is a perfunctory one. It is limited in scope to income received by the debtor and does not equate with the separate determination of a debtor's "disposable income."

The TRUSTEE next contends that the Amended Plan, which provides for the final payment to be made in November, 2012, violates the applicable commitment period set forth in Section 1325(b)(1)(B), which requires an above-median debtor to make payments over a 60-month period. According to the TRUSTEE'S calculation, the DEBTORS' plan must provide for payments for the period beginning 30 days after the case was converted

---

[3] It is true that the language of Section 101(30) is prospective, such that a debtor must have regular income at the time the bankruptcy petition is filed, whereas the concept of "current monthly income" has a historical basis. 11 U.S.C. § 101(10A). An above-median debtor, however, like the DEBTORS here, who has not suffered a job loss or a disruption in income, will always pass the threshold test for "regular income."

EARL has been a truck driver with Grimm Brothers Trucking, Inc., for 17 years. VICKY has been employed by the Peoria Public Schools for the same period of time. Their income is both stable and regular.

4

and continuing for 60 months thereafter. The DEBTORS, conceding this point in their brief, propose to file a Second Amended Plan which will provide for payments of $443.26 per month, beginning on April 1, 2011, and continuing for 28 months with a final payment due on July 1, 2013.

The TRUSTEE'S final argument is that the Amended Plan, which provides for no payments to be made to the Trustee until April 1, 2011, is not filed in good faith, as required by Section 1325(a)(3) of the Bankruptcy Code. The payments under the proposed Second Amended Plan would total $12,411.28, with unsecured creditors receiving $9,170.16, after payment of attorney fees and TRUSTEE'S fees. In support of his argument that the DEBTORS are presently able to make payments under the plan, the TRUSTEE relies on Schedules I and J filed by the DEBTORS, which disclose monthly disposable income of $184.83. By not paying this sum into the plan each month, the TRUSTEE argues, the DEBTORS are not making a good faith effort to repay their creditors.

Because the DEBTORS are above-median, their disposable income is calculated using the "means test." 11 U.S.C. § 1325(b)(3). According to Form 22C, as completed by the DEBTORS, Line 58 lists monthly disposable income which must be devoted to payment of unsecured claims of $293.67. On Line 59, Other Expenses, the DEBTORS list the remaining payments on EARL'S 401(k) loans, which total $23,252.94. In reliance upon Section 1322(f), which provides that repayments of a 401(k) loan "shall not constitute 'disposable income' under Section 1325," the DEBTORS maintain that they do not have "disposable income" with which to make plan payments until month 33 of the Second

5

Amended Plan. It is at that point that the DEBTORS propose to begin making payments to the TRUSTEE.

The effect of Section 1322(f) is to allow a deduction for the monthly average, over 60 months, of all repayments of loans from retirement plans that are projected to be made during the term of the plan. This average amount is to be included on line 55, not line 59, on Form 22C. Line 59 on Form 22C filed by the DEBTORS indicates that the total amount owing on both 401(k) loans, all of which is due during the 60-month period, is $23,252.94. Dividing this figure by 60 yields an average monthly payment amount of $387.55. Accordingly, the correct sum on Line 55 is $626.99, making Line 58 a negative number.

Thus, the issue is whether an above-median debtor with no positive monthly disposable income shown on Line 58 of Form 22C may confirm a plan that proposes payments to unsecured creditors, where the payments are deferred, and where Schedule J shows a positive Monthly Net Income.

First, the Schedule J calculation of Monthly Net Income has no direct role to play in the confirmation process for an above-median debtor, whose disposable income is determined by the means test. 11 U.S.C. § 1325(b)(2); *In re Farrar-Johnson,* 353 B.R. 224, 228-29 (Bankr.N.D.Ill. 2006). Generally, the court may not use the good faith standard of Section 1325(a)(3) to require greater payments by an above-median debtor whose Schedule J shows excess available funds. *Id.* at 232; *In re Mancl,* 381 B.R. 537, 542 (W.D.Wis. 2008); *In re Barr,* 341 B.R. 181 (Bankr.M.D.N.C. 2006). Since the DEBTORS' Second Amended Plan will propose to pay unsecureds more than minimally required by Line 58 on Form 22C, it passes the "projected disposable income" test of Section 1325(b)(1)(B). Having passed that

6

hurdle, it does not run afoul of the good faith requirement merely because Schedule J shows available disposable income that is not being paid into the plan for a portion of the plan's term.[4]

Second, while the proposal to defer commencement of the plan payments until month 33 seems aberrational at first blush, it is attributable to the fact that two secured vehicle loans are being paid outside of the plan rather than through the plan. The Chrysler claim is for a debt that extends beyond the term of the plan and, as such, is permissibly payable outside of the plan. The Harley debt, however, matures during the plan and is more properly payable through the plan. If the Harley debt were to be paid through the plan, it and the DEBTORS' attorney fees would be paid first and payments to unsecured creditors would not commence until around the 37th month. It is common for secured claims, that are payable ahead of unsecured claims, to be paid inside the plan, in which case unsecured creditors may receive no distribution until the third, fourth or even fifth year of the plan. A similar result occurs here, under the proposed Second Amended Plan, even though the DEBTORS are proposing to pay the two secured claims outside the plan, when one or both of those claims are properly payable through the plan.[5] Viewed in that context, the proposed deferral of the plan payments does not result in unsecured creditors being

---

[4] Good faith, however, requires a totality of the circumstances inquiry. Although excess postpetition disposable income is generally not sufficient, by itself, to override the projected disposable income test, it is a factor that may be considered if other evidence of lack of good faith is present. For example, where a debtor who is able to make substantial payments to unsecured creditors proposes a plan that pays them nothing, the debtor's good faith is legitimately questionable. The Second Amended Plan proposed by the DEBTORS is not such a plan. *See In re Smith,* 286 F.3d 461, 466 (7th Cir. 2002) (in considering whether a plan is filed in good faith, court should inquire whether the debtor is really trying to pay his creditors to the reasonable limit of his ability).

[5] Because the TRUSTEE did not object to the Harley claim being paid outside the plan, the Court will not order the DEBTORS to pay it through the plan. Nevertheless, the Court encourages the DEBTORS to propose to pay it through the plan in their Second Amended Plan and, correspondingly, to begin paying the sum of $293 (the contract payment on the Harley) into the plan now. This would eliminate the payment deferral, which, in this Court's view, is a tactic that should be discouraged.

treated worse than they have the right to demand. Under the facts of this case, the deferral in commencement of the plan payments, which is not prohibited by any applicable statutory provision, does not rise to the level of a lack of good faith.

Daimler Chrysler Financial Services Americas, L.L.C. also objected to the provision in the Amended Plan requiring it to send the DEBTORS a monthly billing statement or a payment booklet. The Court makes no ruling on this objection and instead leaves it to the DEBTORS to deal with the issue in their Second Amended Plan.[6]

For the foregoing reasons, the objection by the TRUSTEE to confirmation of the DEBTORS' Amended Plan is granted in part and denied in part. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[6] The Court stated at an earlier hearing that requiring a creditor to send a monthly billing statement or payment booklet is only permitted where such a procedure was in place before bankruptcy.